UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 DANIEL G.,

                            Plaintiff,

v.                                                              1:20-CV-0969
                                                                (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.               SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

        The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 14.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

**I.       RELEVANT BACKGROUND**

## A.     Factual Background

Plaintiff was born in 1977.  (T. 88.)  He completed the ninth grade.  (T. 47.)[1]

Generally, Plaintiff's alleged disability consists of broken left ankle, broken femur,

broken collar bone, metal rod in hip and knee, benign tumor at C6/T5, bipolar

depression, attention deficit disorder ("ADD"), difficulty sleeping, and memory issues.

(T. 196.)  His alleged disability onset date is June 2, 2016.  (T. 88.)

## B.     Procedural History

On June 2, 2017, Plaintiff applied for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act.  (T. 88.)[2]  Plaintiff's application was initially

denied, after which he timely requested a hearing before an Administrative Law Judge

("the ALJ").  On December 6, 2018, Plaintiff appeared before the ALJ, Paul Greenberg.

(T. 28-70.)  On May 20, 2018, ALJ Greenberg issued a written decision finding Plaintiff

not disabled under the Social Security Act.  (T. 12-27.)  On June 8, 2020, the AC denied

Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

## C.     The ALJ's Decision

---

[1]      Elsewhere in the record Plaintiff reported receiving his GED.  (T. 234.)

[2]      On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence."  82 Fed. Reg. 5844.  These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017.  *See, e.g.*, 20 C.F.R. § 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, Plaintiff filed his claim after March 27, 2017. Thus, the 2017 revisions apply to this case.

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 17-24.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 2, 2017.  (T. 17.)  Second, the ALJ found Plaintiff had the severe impairments of: ADD; anxiety disorder; degenerative disc disease; and dysfunction of major joint (ankle, knee).  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b); except:

> [Plaintiff] frequently can climb ramps and stairs.  He cannot climb ladders, ropes, or scaffolds.  [Plaintiff] must be able to sit for five minutes after standing for 25 minutes, or stand for five minutes after sitting for 25 minutes, but he can continue working while in either position.  He can perform work involving simple, routine tasks.  [Plaintiff] cannot perform work in a fast-paced production environment.  [Plaintiff] can have frequent interaction with supervisors as part of a job, and occasional interaction with co-workers and the public.

(T. 19.)[3]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 22-23.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

---

[3]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

Plaintiff makes two arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly develop the record.  (Dkt. No. 11 at 11-12.)  Second, and lastly, Plaintiff argues the ALJ's RFC was based on his lay opinion.  (*Id*. at 12-14.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 13.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the RFC was supported by substantial evidence.  (Dkt. No. 12 at 6-15.)  Second, and lastly, Defendant argues the record was fully developed.  (*Id*. at 15-16.)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

Plaintiff's presents two related arguments.  Plaintiff first agues, "[g]iven the fact

that the state-agency consultants opined that there was insufficient evidence in the

record and that said opinions were the only medical opinions of record; the ALJ had a

duty to develop the record further with regard to Plaintiff's limitations and order

consultative examination."   (Dkt. No. 11 at 12.)  Secondly, Plaintiff argues due to the

ALJ's failure to order a consultative examination, "the ALJ's residual functional capacity

assessment could not have been based on the findings of any consultative examiner."

(*Id*.)  Essentially Plaintiff argues the record did not contain a medical opinion and

therefore the record was insufficient to support the RFC.  Plaintiff's arguments fail.  As

argued by Defendant, although the record did not contain a medical opinion it was

sufficient for the ALJ to make an RFC determination and the ALJ was under no

obligation to seek a consultative examination.  (Dkt. No. 12 at 6-16.)

### A.    Consultative Examination

Plaintiff argues the record was insufficient and therefore the ALJ should have further developed the record by ordering a consultative examination.  (Dkt. No. 11 at 11-12.)  Plaintiff essentially argues the ALJ was required to order a consultative examination because without a medical opinion the ALJ was not permitted formulate an RFC determination.  (*Id*.)  Although sparse, the record before the ALJ was fully developed and the ALJ was not required to order a consultative examination.

In general, the ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed.  20 C.F.R. § 416.919 (the decision to purchase a consultative examination will be made on an individual case basis).  A consultative examination may be required to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision."  *Id*. § 416.919a(b).  However, an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it.  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (citing *Lefever v. Astrue,* 5:07-CV-622, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd* 443 F. App'x. 608 (2d Cir. 2011)).  For the reasons outlined herein, the ALJ was not required to order a consultative examination because the record, although sparse, was sufficient for the ALJ to render a decision.

Although the State agency medical consultants opined the evidence at the time of their review was insufficient to evaluate Plaintiff's claim, the ALJ reviewed all of the evidence in the record and concluded Plaintiff suffered from severe impairments which did not render him disabled.  (T. 22.)  Regarding Plaintiff's mental impairments, the non-examining Stage agency medical consultant A. Dipeolu, Ph.D. reviewed the record on July 10, 2017.  (T. 85.)  Dr. Dipeolu noted Plaintiff failed to submit required forms and

therefore his claim was insufficient.  (*Id*.); *see* 20 C.F.R. § 416.916 ("If you do not give

us the medical and other evidence that we need and request, we will have to make a

decision based on information available in your case.").  Regarding Plaintiff's physical

impairments, the non-examining State agency medical consultant Gary Ehlert, M.D.

reviewed the record on July 12, 2017 and stated there was "insufficient evidence to

evaluate the claim."  (T. 86.)

Drs. Dipeolu and Ehlert assessed non-severe impairments.  (T. 84, 86-87.)  The

ALJ did not find these assessments to be persuasive because they were based on the

simultaneous and inconsistent conclusion that the record lacked relevant evidence.  (T.

22); *see* 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision

how persuasive we find all the medical opinions and all of the prior administrative

medical findings in your case record."). The ALJ further explained the evidence received

at the hearing persuaded him Plaintiff had mental and physical conditions that were

"severe," but that they were not so limiting that he would be unable to perform work

within the RFC assessed.  (T. 22.)

Here, the record is complete and the ALJ was not obligated to obtain a

consultative examination.[4]  The ALJ acknowledged that the documentation relating to

any treatment during the relevant period was very limited.  (T. 18.)  However, the record

contained Plaintiff's written and hearing testimony, treatment notations from primary

---

[4]        The ALJ and Plaintiff's counsel address the record during the hearing.  (T. 32-33.)
Counsel informed the ALJ records were outstanding.  (T. 32.)  The ALJ held the record open for two
weeks.  (T. 33.)  Additional records were received and submitted prior to the ALJ issuing his decision.  (T.
770-858.)  Counsel did not inform the Commissioner of addition outstanding records and no additional
records were submitted to the AC or this Court.

care providers, and other treatment received.  (T. 326-858.)  In addition, Plaintiff was

represented by counsel at all stages of the application process.  (T. 89.)

Plaintiff essentially argues the ALJ was required to order a consultative

examination because without a medical opinion the ALJ was not permitted formulate an

RFC determination.  As further outlined below, the evidence in the record provided

sufficient information upon which the ALJ could formulate the RFC.  Plaintiff had a duty

to prove a more restrictive RFC and failed to do so.  42 U.S.C. § 423(d)(5); *Barry v.*

*Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting

evidence on a matter for which the claimant bears the burden of proof, particularly when

coupled with other inconsistent record evidence, can constitute substantial evidence

supporting a denial of benefits.").  Therefore, the ALJ did not commit error in failing to

order a consultative examination.

### B.    RFC Determination Absent Medical Opinion

Plaintiff argues, "because the ALJ could not have relied upon the findings of any

consultative examiners to formulate his RFC, did not find the sole opinion evidence of

record to be persuasive, and did not make specific citations to the record in support of

his RFC; the ALJ's RFC is necessarily based on his own lay opinion."  (Dkt. No. 11 at

13.)  Plaintiff's argument fails.

First, the RFC is an assessment of "the most [Plaintiff] can still do despite [her]

limitations."  20 C.F.R. § 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's

RFC based on a review of relevant medical and non-medical evidence, including any

statement about what Plaintiff can still do, provided by any medical sources.  *Id*. §§

416.927(d), 416.945(a)(3), 416.946(c).  Although the ALJ has the responsibility to

determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

An RFC finding "is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r Soc. Sec.*, 855 F. App'x 46, *2n.3 (2d Cir. 2021); *see* 20 C.F.R. § 416.927(d)(2). An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Second, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination. *Curry*, 855 F. App'x at 46. An ALJ does not impermissibly "forge his own medical opinions based on raw data or reject diagnoses" where the ALJ accurately summarizes the record. *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 40 (2d Cir. 2020).

Although the record was sparse, the ALJ based his RFC determination on the information provided, and substantial evidence supported the ALJ's determination.  As held in *Biestek v. Berryhill*, substantial evidence is "more than a mere scintilla" and "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations and quotations omitted); *see also Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Here, the record contained "more than a mere scintilla" of evidence regarding Plaintiff's functional abilities and the ALJ's analysis of the evidence in the record was adequate to establish a link between the evidence and the RFC.  *Biestek,* 139 S. Ct. 1154.

In formulating Plaintiff's physical RFC, the ALJ considered the record as a whole. The ALJ noted evidence from Mash Urgent Care where Plaintiff reported his knees had been swollen for the prior two weeks following a bilateral knee injury incurred while skateboarding.  (T. 20, 826.)  Upon physical examination, a doctor observed Plaintiff was well-developed and in no distress and had normal range of motion.  (T. 826-827.) His bilateral knees had abrasions with minimal erythema around the edges and an abrasion on the right lateral ankle area.  (T. 20, 827.)  The doctor assessed Plaintiff as having cellulitis of the lower extremity, prescribed medication, and administered a tetanus shot.  (T. 20, 827.)  The ALJ considered evidence from Plaintiff's primary care providers.  In May 2017, Plaintiff complained of joint pain, but denied bone and back

pain.  (T. 20, 306.)  On examination, Plaintiff's extremities were normal to inspection and palpation, and showed no obvious instability.  (T. 307.)  In June 2017, Plaintiff's physical examination results were entirely unremarkable.  (T. 20-21, 298, 307.)  In November 2017, Plaintiff was encouraged to exercise.  (T. 284.)  A January 2018 physical examination revealed unremarkable results and a notation that Plaintiff enjoyed exercising six days per week and "appear[ed] physically fit and robust."  (T. 21, 273.)

The remaining objective examination findings during the relevant period continued to include unremarkable findings as well as Plaintiff's denial of musculoskeletal pain, and provide further support for the RFC for light work.  *See* T. 277-78, 283, 286, 290, 294, 303, 842; *see White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (RFC for light work supported by record as a whole, where reviewing court could no conclude "a reasonable factfinder would have to conclude" plaintiff lacked ability to perform light work).  The ALJ concluded postural limitations, such as limited climbing activities and a sit/stand option were based on Plaintiff's degenerative disc disease and knee and left ankle dysfunction.  (T. 22.)  As stated by Defendant, these unremarkable physical examination findings and conservative treatment are consistent with Plaintiff's testimony that his primary allegedly disabling conditions were panic and anxiety associated with crowds and meeting new people.  (Dkt. No. 12 at 10.); *see* T. 62.

Regarding his mental RFC, the ALJ's determination was supported by substantial evidence in the record.  The ALJ acknowledged Plaintiff received treatment for anxiety and ADHD, his anxiety onset had been abrupt following a period of drug use and a motor vehicle accident, and the condition was aggravated by crowds, lack of sleep and

stress.  (T. 21, 297.)  However, as the ALJ also noted, Plaintiff reported that his symptoms were alleviated by keeping busy, medication, rest, removing himself from the situation, exercise, and "time outs."  (T. 21, 282, 289, 561.)  In June 2017, providers observed Plaintiff to be cooperative, with no apparent anxiety, depression or agitation and it was remarked that his anxiety and ADHD were stable.  (T. 21, 561-562.)  In July 2017, Plaintiff's mood was normal and his attitude was cooperative and appropriate and his anxiety disorder was stable on medication.  (T. 294.)  In October and November 2017, Plaintiff's ADHD was described as "mostly well controlled" with medication and his attitude continued to be cooperative and appropriate, and his mood was normal.  (T. 282-283, 285-286.)  Plaintiff's anxiety was noted to be stable on medication in November 2017.  (T. 284.)  In December 2017, Plaintiff reported he continued to take his ADD/ADHD medication with good effect and no adverse side effects.  (T. 277.)  He was able to focus on work and "manage business."  (T. 277-278.)  His attitude was cooperative and appropriate with no apparent anxiety, depression or agitation.  (T. 278.)

In January 2018, Plaintiff continued to complain of ADHD and anxiety, but reported he was doing well and hoped to be working out-of-town to earn more money.  (T. 21; 272.)  On examination, Plaintiff's attitude continued to be cooperative and appropriate, he showed no signs of apparent distress, and exhibited no anxiety, depression, or agitation.  (T. 21, 273.)  Plaintiff's medication for anxiety was noted to be effective.  (T. 274.)  The ALJ specifically concluded he provided mental limitations due to Plaintiff's ADD, anxiety, and disc disease and he assessed limited contact due to anxiety and ADD.  (T. 22.)

The ALJ also relied on Plaintiff's activities of daily living.  (T. 18.)  Plaintiff was able to drive (but did not because his license was suspended), attend the gym to sit in the spa or hot tub, help his parents (with whom he lived) with household chores, such as vacuuming, "as much as" he could, and manage his own medical care.  (T. 18, 38-40, 61, 63.)

As noted by Defendant, Plaintiff does not contend that he cannot perform the RFC finding due to his limitations nor does Plaintiff point to evidence in the record supporting greater limitations.  (Dkt. No. 12 at 13); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff had a duty to prove a more restrictive RFC, and failed to do so).  Overall, the ALJ did not interpret raw medical data.  The record contained sufficient medical evidence and other evidence such as testimony to determine Plaintiff's RFC and the ALJ properly relied on this evidence to determine the RFC.  *See Albert P. v. Comm'r of Soc. Sec.*, No. 20-CV-6006, 2021 WL 2845298, at *5 (W.D.N.Y. July 8, 2021) (ALJ did not based RFC on raw medical data, but on the record as a whole).  Overall, the ALJ committed no error by determining the scope of Plaintiff's RFC because that is his responsibility.  *Ramsey*, 830 F. App'x at 39.

The ALJ has the duty to evaluate conflicts in the evidence.  *See* 20 C.F.R. § 404.1567(c)(i); *Monroe,* 676 F. App'x at 7 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations

14

omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek,* 139 S. Ct. at 1154.

**ACCORDINGLY**, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

ORDERED that Defendant's unfavorable determination is **AFFIRMED**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        September 13, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge